UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NUPUR SAHAI,

          Plaintiff,

     v.

LINCOLN FINANCIAL GROUP, INC., et al.,

          Defendants.

Case No. 24-cv-07791-NW

**ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT, GRANTING MOTION FOR RELIEF, AND TERMINATING AS MOOT MOTIONS TO FILE UNDER SEAL**

Re: ECF No. 70, 71, 72, 73, 74, 77

Plaintiff Nupur Sahai alleges that Defendants The Lincoln National Life Insurance Company and Lincoln Life Assurance Company of Boston (collectively, "Lincoln" or "Defendants") wrongfully denied her long-term disability insurance claim.  Sahai moves for summary judgment on her claims for breach of the implied covenant of good faith and fair dealing and breach of contract.[1]  ECF No. 71[2] ("Sahai MSJ").  Lincoln opposes Sahai's motion, cross-moves for summary judgment on the breach of the implied covenant claim, and seeks summary judgment on Sahai's prayer for punitive damages.  ECF No. 74 ("Lincoln MSJ").

The Court held a hearing on the motions on May 27, 2026.  Having considered the parties' arguments and the relevant legal authority, the Court DENIES both motions for summary judgment.  The Court also GRANTS Sahai's motion for relief to file an untimely motion for summary judgment (ECF No. 72) and TERMINATES AS MOOT the parties' motions to file

---

[1] Although Sahai seeks summary judgment on both claims, she titles her motion a "partial motion for summary judgment."  At the hearing, Sahai clarified that her motion concerns Lincoln's alleged bad faith at the time of the termination of benefits but does not address any ongoing bad faith.

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

under seal (ECF Nos. 70, 73, 77).

## I.     BACKGROUND[3]

### A.     The Group Policy

Lincoln issued the University of California group policies to fund short-term disability ("STD") benefits (Group Policy No. GD3-860-037972-01) and long-term disability ("LTD") benefits (Group Policy No. GF3-860-037972-01) (together, the "Group Policy") under the University of California's disability plan. *See* ECF No. 74-4 (Group Policy). The Group Policy limits short-term disability benefits to 24 weeks. *Id.* at 14.

Under the Group Policy,

> **"Total Disability"** or **"Totally Disabled"**, with respect to Long-term Disability, means:
>
> i. that during the Elimination Period and the next 24 months of Total Disability the Covered Person, as a result of Injury or Sickness, is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way; and
>
> ii. thereafter, the Covered Person is unable to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity.

*Id.* at 5 (emphasis in the original). The Group Policy defines "'Substantial and Material Acts', with respect [to] Long Term Disability" as "the important tasks, functions and operations that: 1. are generally required by employers from those engaged in the Covered Person's Own Occupation; and 2. cannot be reasonably omitted or modified." *Id.* at 5.

### B.     Sahai's Short-Term Disability Claim

Sahai completed her Ph.D. with honors and residency at the University of Illinois in 2017. In 2019, Sahai was hired by the University of California Santa Cruz as a Counseling Psychologist II. She performed clinical work, including providing approximately four or more

---

[3] The background facts are drawn from the parties' respective motions for summary judgment and accompanying authenticated exhibits. *See also infra* § III(A)(2).

United States District Court
Northern District of California

individual therapy sessions per day, five days a week; provided outreach and programming; held trainings; and participated in meetings.

### 1.    Dr. Layno-Moses' Peer Review

Sahai was covered under the Group Policy as of August 12, 2019.  On October 15, 2021, she filed a claim for short-term disability benefits due to ankle pain and chest pain.  Senior Claims Specialist David George handled the claim and asked a third-party vendor, Exam Coordinators Network ("ECN"), to conduct a peer review of Sahai's medical records.  ECN selected Annie Layno-Moses, M.D., a board-certified physiatrist and pain management physician to perform the review.

Dr. Layno-Moses reviewed Sahai's records from June 17, 2021, through November 3, 2021, including: records from Carl Carlson, M.D., V. Liane Rice, O.D., and Dipali Apte, M.D.; Sahai's Patient Health Questionnaire; and records from Swanson McArthur Physical Therapy.  In her December 13, 2021 peer review, Dr. Layno-Moses noted that Sahai had "a medical history significant for bilateral ankle pain, mast cell activation syndrome, hypermobility, and fibromyalgia."  ECF No. 74-16 at 2.  Dr. Layno-Moses concluded that, "taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side effects, [Sahai] does not have impairment that translates into restrictions and limitations from - 8/22/21 to - 11/29/21."  *Id.* at 3.  Dr. Layno-Moses also found that "the medical records do not support R&Ls [restrictions and limitations] that were recommended by treating providers for the timeframes in question."  *Id.* at 4.  In particular, Dr. Layno-Moses was "unable to concur with Dr. Carlsons' [*sic*] recommendation of total restriction as the medical records reviewed above do not support severe physical impairment that precludes occupational functioning."  *Id.*

Dr. Layno-Moses attempted to contact Dr. Carlson regarding her findings.  Dr. Carlson did not speak to her over the phone, but instead requested written questions.

### 2.    Dr. Layno-Moses' Addendum

Dr. Layno-Moses submitted a January 6, 2022 addendum, in which she considered additional medical information from A. Sheth and Swanson McArthur Physical Therapy regarding

United States District Court
Northern District of California

Sahai's ankle pain that "alter[ed] [her] previous opinion." ECF No. 74-17 at 3. Dr. Layno-Moses found that, "[b]ased on the information provided, [Sahai] has been experiencing bilateral ankle pain along with hypermobility and difficulty walking. She was using custom molded, fully functional orthotic appliances." *Id.* Dr. Layno-Moses then "opine[d] that [Sahai] requires additional restrictions" as follows: Sahai could (1) stand and walk occasionally, for up to 2 hours per day; (2) walk, lift, carry, push, and pull occasionally up to 20 pounds; (3) occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; (4) never crawl; (5) use her lower extremities for foot controls occasionally; and (6) not climb ladders, work at unprotected heights, or operate heavy machinery. *Id.* Sahai's ability to sit and reach, her fine manipulation, and simple and firm grasping were unrestricted. *Id.* Dr. Layno-Moses opined that "restrictions and limitations are indicated from 8/22/21 to - 11/29/21, with re-assessment on or around 3/1/2022."

### 3. Approval of Claim

Lincoln approved Sahai's short-term disability claim on February 22, 2022. Lincoln determined her date of disability to be August 23, 2021. The letter further noted that "[t]he information we currently have indicates that your physician has advised you to cease work through November 28, 2021" and that "[w]e will continue to update your file to support that you meet the definition of disability going forward." ECF No. 79-19 at 2.

As the Group Policy limited short-term disability benefits to 24 weeks, Sahai's "initial 24 weeks of benefits ended on February 20, 2022." ECF No. 74-25 at 2.

### C.    Sahai's Long-Term Disability Claim

In March 2022, Sahai's claim was escalated to long-term disability and assigned to LTD Claims Specialist Jamila Davidson.

### 1.    Occupational Review

On March 24, 2022, Meredith Hester, a Lincoln Vocational Rehabilitation Consultant, performed an occupational analysis, in which she "compare[d] the job title Counseling Psychologist 2 to the occupation in the national economy, of Psychologist, Counseling performed at the sedentary level of physical demand." ECF No. 74-20 at 2. Hester did not meet with Sahai for purpose of the review; rather, her "opinions are based on a review of medical records and

4

resources listed only." *Id.* at 3. Hester opined that the occupational physical demands were sedentary and required with constant sitting; frequent talking and hearing; and occasional standing, walking, reaching upward and downward, keyboard use, and near acuity. *Id.* at 3; *see id.* ("The physical demand level of the job is unknown. In the national economy, the occupation requires sedentary work."). In addition, Hester determined that "[b]ased on the standard vocational resources outlined above, coupled with my vocational expertise, part-time opportunity does exist in this occupation." *Id.*

### 2. Dr. Broomes' Peer Review

Davidson requested a file review by an independent medical consultant from a third-party vendor, ExamWorks, which selected Stephen Broomes, M.D., a board-certified internal medicine physician, to conduct the review.

Dr. Broomes reviewed: progress notes from Dr. Carlson, Eye Consultants of Silicon Valley/Vision Medical Group, Vision Care of Santa Clara Valley, "D. Apte, M.D.", and "Cupertino Podiatry/A. Sheth, D.P.M"; physical therapy records; job descriptions; Dr. Layno-Moses' file review; Hester's occupational analysis; and unspecified "claim notes" dated March 22–31, 2022.

Dr. Broomes opined that "[t]here was no impairing diagnosis noted for the review period in question" and that, "[t]aking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side effects, restrictions and limitations are not supported from 02/21/2022 going forward":

> [T]here is no documentation of functional capacity. The claimant was mostly evaluated via telemedicine and was performing home exercises on her own. There was no laboratory study to suggest a long-term chronic condition which could be affecting the claimant's functional capability to perform ADL's and return to work. In addition, there was no hospitalization, ER visits, or even Urgent care note to substantiate any functional impairment the claimant have reported. There was no evidence of an examination to support physical, focal, or cognitive deficits. Therefore, from the perspective of Internal Medicine, functional impairment is not supported from 02/21/2022 and beyond.

ECF No. 74-21 at 5; *see id.* at 4 ("There was no impairing diagnosis noted for the review period in question.").

Dr. Broomes attempted to contact Dr. Sheth[4] and Dr. Carlson twice each for a teleconference to ask "[w]as [Sahai] hospitalized three months prior to 02/21/2022?", but "[t]he teleconference attempts were unsuccessful." *Id.* at 3, 5.

### 3.    Letter from Dr. Carlson

In an April 13, 2022 letter to Dr. Broomes, Dr. Carlson "clarif[ied] [his] involvement with Dr[.] Sahai and her current degree of disability." ECF No. 74-22 at 3.  According to Dr. Carlson,

> Ms Nupur Sahai is a 36 year old Psychologist who was referred for evaluation of POTS.  I verified she has a true POTS disorder with postural tachycardia with slight or little bp change. Further history indicated wide ranging problems that I think  now are best characterized by Mast Cell Activation Syndrome with symptoms of Chronic Fatigue, Fibromyalgia Involving multiple joints, Irritable Bowel, GERD, Recurring GU problems, Recurring iritis with eye pain, Headaches with the joint problems and dysautonomia causing virtual immobility.  A very complicated collection of disorders best characterized as a part of Hypermobile Ehlers-Danlos Spectrum Disorders along with the Most Cell Activation without evident triggers.

*Id.*

### 4.    Nancy Block's Evaluation

Sahai also sent Lincoln an April 12, 2022 evaluation by Nancy Block, Sahai's physical therapist and joint hypermobility specialist.  Block diagnosed Sahai with the following:

> Possible Hypermobility Ehlers-Danlos Syndrome (hEDS) Q79.60, vs. possible Hypermobility Spectrum Disorder (HSD), M35.7, Cervicalgia, M54.2, Low back pain M54.50, Patella Femoral Knee pain M22.2x9, Shoulder Pain M25.519, Ankle pain M25.529, Wrist pain M25.539.

ECF No. 74-22 at 13.  Block reported that

> Nupur has become more functionally disabled since I last saw her in 2020.  She is now  housebound, cannot drive, has lost her job, and requires help for her ADLs and is unable to do any of her JADLs. She states Bilateral R>L lateral foot/ankle/lower leg pain and severe fatigue are her biggest barriers to function.

*Id.*  In addition, Block opined that,

---

[4] Dr. Broomes' notes state that he called, and left voicemails for, Dr. Sheth on April 8 and 11, 2022.  ECF No. 74-21 at 3.  However, his "SUMMARY OF DISCUSSION(S)" refers to "Dr. Rogers." *Id.*  The Court assumes this was in error.

> [i]n Assessment Nupur presents with the subjective reporting and observable problems associated with Ehlers-Danlos Hypermobility Syndrome (hEDS) or HSD according to the new criterion released March 15th 2017 in the *American journal of Medical Genetics Part C (Seminars in Medical Genetics)*.    Nupur needs home health physical therapy as well as OT, a more frequent caretaker, social worker, should revisit her GI doctor and a nutritionist.  At this point in time, she is unable to get out of her house to attend the needed visits she requires to improve her function . . . .

> Her physical therapy problem list is: possible upper cervical instability, decreased core stabilizer strength, decreased strength with MMT, functional weakness in LE's, postural faults, improper ergonomics, chronic pain, poor tolerance to upright positions, poor balance, decreased functional capacity, limited ability to walk > 15', generalized joint hypermobility-Beighton Score of 5/9, decreased endurance, SI positional dysfunction, cervical spine myospasm, lumbar spine radiculopathy, pain cervical spine, abnormal pain and fatigue.

*Id.* at 15.

### 5.    Dr. Broomes' Addendum

Dr. Carlson's April 13, 2022 letter and Block's April 12, 2022 evaluation, "alter[ed] [Dr. Broomes'] original opinion."  ECF No. 74-23 at 4.  In a May 4, 2022 addendum, Dr. Broomes found that

> From the perspective of Internal Medicine, functional impairment is supported from 02/21/2022 through the present date.  An evaluation dated 04/12/2022 indicated that the claimant had become more functionally disabled since she was last seen in 2020.   On examination, the claimant had ataxic gait, knee buckling, occasional loss of balance, "furniture walking" as she required holding on to chairs to maintain her balance and decreased functional strength.  She was unable to walk up to 10 feet without resting.

> The claimant was now housebound, could not drive, and required help for her activities of daily living, and could not perform any activity.  She stated that bilateral foot/ankle, lower leg pain and severe fatigue were her biggest barriers to function.

> Based on the examination and pending specialist evaluation to determine the etiology of her symptoms, functional impairment is supported.  The claimant is precluded from working in any capacity from 02/21/2022 through the present date.

*Id.* Dr. Broomes further opined that "[t]he prognosis for [Sahai] is undetermined.  A re-evaluation in one month is recommended to monitor her progress and if impairment should be extended (6/4/22)." *Id.*

### 6.   Approval of Claim

On May 4, 2022, Davidson recommended approval of Sahai's long-term disability claim. ECF No. 74-24 at 21 ("DCM RECOMMENDS APPROVAL BASED ON SUPPORTED R/LS. TASK SET FOR TX UPDATE.  REFERRED TO M1 FOR REVIEW") (capitalization in the original).  On May 5, 2022, Robert Digiandomenico, Davidon's manager, approved the recommendation.  *Id.* ("AGREE WITH RATIONALE TO APPROVE LTD CLAIM BASED ON PEER MD INT MED REVIEW0ADDENDUM DATED MAY 4-22 -IMPAIRMENT IS SUPPORTED OO") (capitalization in the original).

In a letter dated May 5, 2022, Davidson notified Sahai that her long-term disability claim had been approved for the period of disability starting February 21, 2022.  Specifically, Sahai was eligible for long-term disability benefits. Davidson also advised Sahai that

> [t]o qualify for continuing disability benefits, you must continue to be "Totally Disabled" as defined in the University of California Long-term Disability Policy . . . .
>
> We will continue to review your claim and request medical documentation to evaluate your continued eligibility for benefits. Please note that approval at this time does not guarantee payments through the maximum benefit duration. It is imperative that you assist with the management of your claim going forward by providing prompt responses to our requests for information.  Please notify our office immediately if your condition changes or your physicians alter your treatment plan.

ECF No. 74-25 at 3.

### 7.   Continued Review of Claim

In May 2022, Lincoln reassigned Sahai's claim to LTD Case Manager Michele Sanchez Borboa.  In a June 7, 2022 letter, Borboa notified Sahai that "[w]e have contacted Nancy Block, Dr. Carlson, Dr. Volpe, Kathy Wasowski, Dr. Lacovelli, Dr. Rice, Dr. Foster, Swanson Macaruthur, and Eye Consultants of Silicon Valley to obtain all medical records pertaining to your disability from April 13, 2022 through the present" and explained that "[t]his information is necessary to complete our claims investigation."  ECF No. 74-26 at 2.  Borboa requested that Sahai "contact [her] medical providers and have them respond to our request as soon as possible" and advised that "[w]ithout the information specified above, we will be unable to

evaluate eligibility for benefits." *Id.* at 2–3.  Borboa thus "ask[ed] that this information be submitted to [Sahai's] claim file no later than July 5, 2022[.]" *Id.* at 3.  If Sahai failed to provide the requested information, Lincoln "w[ould] make a claim determination based on the information in [its] file." *Id.*

### a.      Dr. Emami's Peer Review

Borboa also requested that ECN conduct another medical review.  ECN selected Dr. Reza Emami, a board-certified family physician.  As part of his July 26, 2022 peer review, Dr. Emami reviewed Sahai's records dated April 20, 2021, through June 27, 2022, from Dr. Lee Chyh Woei, MD/Allergy & Immunology; Dr. Volpe Katherine, MD/Urogynecology & Reconstructive Pelvic Surgery; Dr. Christopher J. Bonzon, MD/Physiatrist; Dr. Zuzana U. Foster, MD/Rheumatology; Dr. Carlson; Dr. V. Liane Rice, OD/Optometrist; Dr. Sheth; Dr. Apte; Madelynn Spalding, PT/Physical Therapist; Rahul N. Khurana, MD/Ophthalmologist; Block; Moustafa Zakaria, CT/Cytopathologist; and Owatha Tatum, PhD/Pathologist.

Dr. Emami diagnosed Sahai with Ehlers Danlos Syndrome, postural orthostatic tachycardia syndrome, chronic fatigue syndrome, and thoracic scoliosis, with comorbidity of fibromyalgia.  Dr. Emami opined that "the medical management recommended by the provider and followed by [Sahai] is clinically reasonable and consistent with the apparent level of severity for the reported condition."  ECF No. 72-27 at 6.  Dr. Emami further found that "the evidence suggests that the claimant suffers from a medical condition of such severity to warrant the placement of restrictions and limitations on her activities for the time period of 08/22/2021 through the present and ongoing."  *Id.* at 7.  Dr. Emami identified limitations and restrictions for each diagnosis, which "are indicated from 08/22/2021 through the present and ongoing with reassessment on or around 02/22/23." *Id.* at 8–10.

Dr. Emami attempted to contact Drs. Lee, Volpe, Bronzon, Foster, Carlson, and Rice, Sahai's attending physicians, "to discuss the findings of [Dr. Emami's] review and develop a consensus, if possible, regarding restrictions and limitations, duration, and prognosis." *Id.* at 10–11.  Specifically, Dr. Emami sought to ask Drs. Carlson, Volpe, and Foster, "[f]rom a family medicine perspective, can you please summarize the specific objective findings that are consistent

United States District Court
Northern District of California

United States District Court
Northern District of California

with occupational activity restrictions?" *Id.* at 11. Dr. Carlson and Volpe requested written questions be faxed to them. Dr. Carlson responded, as detailed below; it does not appear that Dr. Volpe replied. The remaining physicians did not respond to Dr. Emami's messages.

### b.    Dr. Carlson's Response

Borboa forwarded Dr. Emami's peer review to Sahai's treatment providers. In an August 3, 2022 letter, Dr. Carlson wrote "to respond to the medical evaluations done by several physicians and others concerning the disability claim of Dr Nupur Sahai." ECF No. 74-28 at 2. Dr. Carlson explained that he had evaluated Sahai in person on May 27, 2021, for Paroxysmal Orthostatic Tachycardia Syndrome ("POTS"), and had met with her virtually "many times sin[c]e then." *Id.* Dr. Carlson noted that,

> Over time it is apparent that she has a progressive, highly complex, rare disorder involving Hypermobile and possibly Vascular Ehlers-Danlos Spectrum Disorder.
>
> . . .
>
> Since I have known her, all these problems continue to progress, regress, wax, and wane randomly. There is no Medical Specialty that has evolved to care for people with this problem although there are frequent editorials lamenting our inability to provide comprehensive care to people with Complex Medical Disorders like she has.

*Id.* Dr. Carlson concluded that he "agree[d] with the findings of all these reports."

### c.    Dr. Flores' Peer Review

On February 15, 2023, Borboa requested that Sahai provide the names of her medical providers, hospitals, medical insurance carriers, and pharmacies used between August 1, 2022, to the present. Sahai responded on March 1, 2023. The next day, Borboa requested updated medical records from Sahai's medical providers.

On April 3, 2023, Borboa referred Sahai's claim to ECN for another peer review. ECN assigned Sahai's claim to Dr. Mahdy Flores, D.O., who is board-certified family, preventative, and occupational medicine. On April 10, 2023, Dr. Flores reviewed Sahai's medical records from April 18, 2022, through March 22, 2023, and Dr. Flores diagnosed Sahai with POTS, hypermobile Ehlers-Danlos syndrome, lumbago, lumbar degenerative disc disease, lumbar disc herniation,

United States District Court
Northern District of California

lumbar stenosis, cervicalgia, and cervical disc herniation, and comorbidities of mast cell activation syndrome and fibromyalgia.  Dr. Flores noted that "[t]here were no R&Ls that were recommended by treating providers for the timeframes in question" and opined that "the medical management recommended by the provider and or followed by the claimant is clinically reasonable and consistent with the apparent level of severity for the reported condition."  ECF No. 74-31 at 13.  "As a result of the cumulative effect of multiple debilitating conditions, [Dr. Flores] recommend[ed] restrictions to account for the ongoing symptomatic burden" that were "indicated from 08/22/2021 through present and ongoing with reassessment on or around 12/13/2023."  *Id.* at 15–16; *see id.* at 15–16 (listing restrictions and limitations).  Dr. Flores further found that "[Sahai]'s abilities are sustainable on a full-time basis."  *Id.* at 16.

Dr. Flores twice called and left messages for each of Drs. Volpe, Carlson, Choy, Bonzon, Roorda, and Mahmoudi to discuss the "findings of [his] review and develop a consensus, if possible, regarding restrictions and limitations, duration and prognosis."  *Id.*  The providers did not respond to Dr. Flores' messages but, as detailed below, Drs. Mahmoudi, Roorda, Beingesser, and Bonzon provided written responses.

### d.    Attending Physicians' Review and Dr. Flores' Addendum

Borboa sent Dr. Flores' restrictions and limitations and finding that "[Sahai's] abilities are sustainable on a full-time basis" to Drs. Mahmoudi, Carlson, Beingesser, Roorda, and Bonzon.  Borboa's letter asked each medical provider to indicate whether they "agree with the findings of the review," and to "suppl[y] additional information/comments to highlight where [he or she] d[id] not agree with the findings of the review" or "w[ould] be providing no comment on the content and medical findings of the report[.]"  ECF No. 74-33 at 3; ECF No. 74-34 at 3, 6; ECF No. 74-35 at 3.  Drs. Carlson and Volpe did not respond, and Drs. Beingesser and Roorda declined to comment on Dr. Flores' findings.  In response to the question "Have you placed [Sahai] on restrictions from 08/22/2021?", Dr. Mahmoudi responded, "No."  ECF No. 74-32 at 2.  In response to the question "Which measurable functional deficits were you basing these restrictions on?", Dr. Mahmoudi stated that, "I have not" and "Please contact the Dr. who has placed the restrictions."  *Id.*

Dr. Bonzon included his own limitations and restrictions for Sahai and opined that

> [Sahai] continues to be unable to perform her own job, and any job for which she is qualified, consistent with her education, training, and experience. Her job as a therapist is not possible. She is not able to focus and be dependable/reliable to perform job tasks, and provide care for others.

ECF No. 74-35 at 5 (internal quotation marks omitted).

Dr. Flores reviewed Dr. Borzon's response and, in a May 5, 2023 addendum, stated that "the prior R/Ls remain unchanged." ECF No. 74-38 at 3. Dr. Flores provided the following explanation as to why there was no change:

> Dr. Bonzon did not agree with the review and opined [Sahai] is unable to perform her job as a therapist as she cannot focus. Dr. Bonzon also stated she has physical and cognitive side effects of pain medications yet did not specify what these were or if they had an impact on functioning. Regardless, comments on cognitive status are beyond the scope of this review. Also, this review is made independent of the claimant's "own occupation". [Sahai] filled out the R/Ls list, as to what she does at her job as a therapist, which has no bearing on this review. Given no additional clinical information, the prior R/Ls remain unchanged.

*Id.*

Dr. Flores also attempted again to contact Dr. Carlson. On May 4, 2023, Dr. Carlson's receptionist informed Dr. Flores that Dr. Carlson "does not wish to participate in the peer to peer." *Id.*

### e. Dr. Reeves' Clinical Consultation

On May 16, 2023, Borboa requested a clinical consultation with Dr. Rebekah Reeves, a board-certified internal medicine physician. Although Dr. Reeves did not perform a full review of Sahai's file, she opined that, "BASED ON THE AVAILABLE RECORDS, THERE IS NOT A LOT OF OBJECTIVE DATA CONTAINED IN THE MEDICAL RECORDS THEREFORE THERE IS NO ADD'L OBJECTIVE INFORMATION IN WHICH TO CHANGE THE ASSESSMENT FROM THE IM PEER REVIEW FINDINGS[.]" ECF No. 74-24 at 3 (capitalization in the original).

### 8. Lincoln's Termination of Sahai's Long-Term Disability Benefits

Given Dr. Reeves' consultation, Borboa recommended closing Sahai's long-term disability

12

claim.  Digiandomenico agreed.

In a May 16, 2023 letter, Borboa notified Sahai that Lincoln was terminating her long-term disability benefits.  The letter identified the medical records that Lincoln had received, Dr. Flores' opinion regarding restrictions and limitations, Dr. Borzon's response, and Dr. Flores' addendum.  Borboa explained that, given the disagreement between Dr. Flores and Dr. Borzon, "[Sahai's] claim was reviewed in an Internal Medicine consult with a second Independent Board-Certified Consulting Physician" who "agrees with the first peer reviewer, based on the available records, [that] there is not a lot of objective data contained in the medical records therefore there is no additional objective information in which to change the assessment from Dr. Flores's internal medicine peer review findings."  ECF No. 74-39 at 4.  "Consequently, [Lincoln] ha[d] determined based on the consensus of medical opinion reached between the two independent medical reviewers that specialize in Internal Medicine that you retain the capacity to perform the material duties of your occupation for a counseling psychologist 2."  *Id.* at 5.

Borboa concluded,

> [t]he medical information on file does not support your inability to perform your full-time occupation as a Counseling psychologist 2 as of May 2023.  Therefore, based on the information in your claim file, benefits have been paid through May 20, 2023 no further benefits are payable as of May 21, 2023, and your claim has been closed.

*Id.* at 5.  Borboa also provided Sahai information on how to request a review of the denial.  Sahai did not request a review.

## II.    LEGAL STANDARD

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the evidence in the light most favorable to the non-movant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).  A genuine issue of material fact exists if there is sufficient evidence such that a reasonable jury could return a verdict for the non-moving party.  *Id.* at 248.  The Court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.  *See id.*

United States District Court
Northern District of California

13

at 249.

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, and conclusory assertions will not suffice. *See Anderson*, 477 U.S. at 252; *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Where, as here, the parties have filed cross-motions for summary judgment, "[e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## III.    DISCUSSION

Sahai asserts two claims against Lincoln: (1) breach of the implied covenant of good faith and fair dealing and (2) breach of contract. ECF No. 1 at 19–35 (Compl.).

### A.    Violations of Local Rules and the Court's Standing Order

As a preliminary matter, Sahai's briefing fails to comply with the Federal Rules of Civil Procedure, Civil Local Rules, and the Court's Standing Order for All Civil Cases ("Standing Order") in several respects, including the more egregious issues noted below with the Court's attendant rulings.[5]

#### 1.    Evidentiary Objections

In a separately filed, 23-page brief that attaches 39 pages of exhibits, Sahai objects to

---

[5] Sahai's opening and opposition/reply briefs, both of which exceed 10 pages, also lack a table of contents and a table of authorities. *See* Civil Local Rule 7-4(a)(2).

United States District Court
Northern District of California

paragraphs 1–3, 10–14, 19–24, 26–27, 29–36, 40–43, 49–54, 59, 62–70, 74–80 of the Schaapveld Declaration, and attached Exhibits 28 and 35.  ECF No. 85.  Sahai's objections violate Civil Local Rule 7-3(a) and (c), and Section K of the Court's Standing Order, which require objections to be included within a party's brief.  Civ. L.R. 7-3(a) ("Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum."); Civ. L.R. 7-3(c) (same); Standing Order § K ("Objections to evidence shall be contained within the objecting party's brief and shall not be filed as a separate pleading.").  Accordingly, Sahai's evidentiary objections are OVERRULED.

### 2.    Authentication of Exhibits

In violation of Civil Local Rule 7-5(a), Sahai does not authenticate any of her exhibits with a declaration or affidavit and instead simply appends them to her briefs.  *See* Civ. L.R. 7-5(a) ("Extracts from depositions, interrogatory answers, requests for admission and other evidentiary matters must be appropriately authenticated by an affidavit or declaration.").  None of these exhibits are self-authenticating. *See* Fed. R. Evid. 902.  Accordingly, the Court STRIKES Sahai's exhibits filed in connection with (1) her motion for summary judgment, and (2) her opposition to Lincoln's motion and reply in support of her motion for summary judgment.  *See Lemoon v. California Forensic Med. Grp., Inc.*, 575 F. Supp. 3d 1212, 1229 (N.D. Cal. 2021) (striking exhibits attached to summary judgment motion without "a declaration attesting to the[ir] admissibility").

### 3.    Statements of Undisputed Material Fact ("SUMF")

Sahai also filed "Additional Material Facts And Response To Defendants' Additional Material Facts In Support of Plaintiff's Motion for Partial Summary Judgment."  ECF No. 83.  This document only asserts new facts that were not identified in Sahai's Opening SUMF and does not otherwise provide responses to Lincoln's additional material facts.  This violates the Court's Standing Order that "[t]he Reply SUMF shall not introduce any new asserted material facts."  Standing Order § K.  Sahai's additional material facts are STRICKEN.[6]

---

[6] In addition, Sahai's response to Lincoln's SUMF mistakenly copies Lincoln's SUMF No. 5 for

#### 4.     Sahai's Untimely Filings

Sahai belatedly filed its opening and opposition/reply briefs, which were due April 3 and 27, 2026, respectively.  *See* ECF No. 65 (setting April 3, 2025 deadline to file dispositive motions.)  Sahai seeks relief pursuant to Federal Rule of Civil Procedure 6(b)(1)(B) for filing her opening brief at 12:16 a.m. on April 4, 2026 due to "a technical difficulty" that occurred when uploading exhibits.  ECF No. 72 (motion for relief).

When filing the opposition/reply brief, evidentiary objections, and additional material facts, counsel for Sahai used an incorrect ECF number and omitted "several" exhibits.  ECF No. 81 (notice of errata) at 2.  Counsel served the omitted filings on Lincoln at 12:06 a.m. on April 28 and filed a notice of errata and the corrected documents on April 30.[7]  ECF Nos. 82–85.

As an initial matter, Section E of the Court's Standing Order provides that "[a]ll filing deadlines are at 5:00 p.m. unless otherwise ordered."  Notwithstanding any technical errors that occurred, counsel's attempt to file Sahai's opening brief at 11:40 p.m. on April 3 and the filing of the opposition/reply brief at approximately 6:00 p.m. on April 27 was untimely.

Nevertheless, Lincoln did not file an opposition to Sahai's motion for relief or otherwise object to the errata.  It also appears that Sahai's counsel served both briefs and accompanying documents on Lincoln within a reasonable timeframe such that Lincoln was not unduly prejudiced by counsel's errors.  Thus, in the interests of justice and given the lack of prejudice, Sahai's motion for relief as to the untimely filings is GRANTED.

#### B.     Breach of the Implied Covenant of Good Faith and Fair Dealing

Sahai and Lincoln each seek summary judgment on the breach of the implied covenant claim.  Sahai argues that Lincoln failed to conduct an adequate investigation because it did not evaluate her cognitive limitations and because Dr. Reeves' review of the other doctors' opinion was a "sham."  Sahai MSJ at 15–21.  Sahai further contends that Lincoln's decision to terminate

---

SUMF Nos. 6, 7, and 8.  *Compare* ECF No. 76 at 2–3 *with* ECF No. 84 at 3–4.

[7] Notably, counsel did not attach a declaration, signed under penalty of perjury, attesting to timely and complete service on Lincoln.  *See* ECF No. 81.

16

her benefits was contrary to the medical evidence and was therefore unreasonable.  *Id.* at 21–25. Lincoln asserts that the implied covenant claim fails as a matter of law under the "genuine dispute" doctrine because it reasonably relied on experts' opinions when it decided to terminate Sahai's long-term disability benefits.  Lincoln MSJ at 14–22.

"The law implies in every contract, including insurance policies, a covenant of good faith and fair dealing."  *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007), *as modified* (Dec. 19, 2007).  "[T]he essence of the implied covenant of good faith and fair dealing is that the insurer must refrain from doing anything that will injure the right of the insured to receive the benefits of the insurance agreement, the terms and conditions of which define the duties and performance to which the insured is entitled."  *Brandwein v. Butler*, 218 Cal. App. 4th 1485, 1514 (2013) (citation modified).  This requires the insurer to "give at least as much consideration to the interests of the insured as it gives to its own interests.  When the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort."  *Zubillaga v. Allstate Indem. Co.*, 12 Cal. App. 5th 1017, 1027 (2017) (citation modified).

"Under California law, a breach of the implied covenant of good faith and fair dealing in the insurance context has two elements: '(1) benefits due under the policy must have been withheld and (2) the reason for withholding benefits must have been unreasonable or without proper cause.'"  *Kunde Enters., Inc. v. Nat'l Sur. Corp.*, 608 F. Supp. 3d 883, 900 (N.D. Cal. 2022) (quoting *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990)).

The parties do not dispute the first element but disagree whether Lincoln's denial of benefits was reasonable.  Lincoln argues it is shielded from liability under the genuine dispute doctrine, which "holds that an insurer does not act in bad faith when it mistakenly withholds policy benefits, if the mistake is reasonable or is based on a legitimate dispute as to the insurer's liability."  *Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 949 (2006), *as modified on denial of reh'g* (June 16, 2006) (citations omitted); *see Fadeeff v. State Farm Gen. Ins. Co.*, 50 Cal. App. 5th 94, 101 (2020), *as modified on denial of reh'g* (July 1, 2020) ("As a close corollary of that principle [of the covenant of good faith and fair dealing], it has been said that 'an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with

17

its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract.'") (quoting *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001), *as modified on denial of reh'g* (July 30, 2001)). "[T]he reasonableness of the insurer's decision to deny benefits must be evaluated as of the time it was made."[8] *Century Sur. Co.*, 139 Cal. App. 4th at 956; *see Chateau Chamberay*, 90 Cal. App. 4th at 347 ("[T]he evaluation cannot fairly be made in the light of subsequent events which may provide evidence of the insurer's errors.").

"As with all bad faith claims, the pivotal concern is whether the insurer acted unreasonably or without proper cause in its handling of the claim." *Sekera v. Allstate Ins. Co.*, 763 F. App'x 629, 631 (9th Cir. 2019) (citations omitted). "The genuine issue rule in the context of bad faith claims allows a trial court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law." *Zubillaga v. Allstate Indem. Co.*, 12 Cal. App. 5th 1017, 1027–28 (2017) (citation modified). Thus, "an insurer is entitled to summary judgment based on a genuine dispute over coverage or the value of the insured's claim only where the summary judgment record demonstrates the absence of triable issues . . . as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith." *Id.* at 1028 (citation modified); *see Sekera*, 763 F. App'x at 630–31 ("[B]ad faith claims may be dismissed on summary judgment if the insurer can show both that there was a 'genuine dispute' as to liability, . . . and that the insurer has not acted in bad faith 'for advancing its side of that dispute[.]'") (citations omitted).

Courts "determining if a dispute is genuine . . . do 'not decide which party is "right" as to the disputed matter, but only that a reasonable and legitimate dispute actually existed.'"

---

[8] For this reason, evidence obtained during discovery in this matter that Sahai's activities were inconsistent with her representations to Lincoln, *see* Lincoln MSJ at 18–19, is immaterial to the reasonableness analysis if Lincoln was not aware of such conduct at the time it terminated her long-term disability benefits.

18

*Zubillaga*, 12 Cal. App. 5th at 1028 (quoting *Chateau Chamberay*, 90 Cal. App. 4th at 348 n.7); *Chateau Chamberay*, 90 Cal. App. 4th at 350 ("We are not called upon to determine whether [the insurer's] view as to the proper outcome of the adjustment process was correct.  It is only necessary for us to determine that, *in light of the record as a whole*, its position with respect to the disputed points was *reasonable* or that [the insurer] had *proper cause* to assert the positions that it did . . . . [A]s long as *there is no dispute as to the underlying facts*, it is for the court, not a jury, to decide whether the insurer had 'proper cause.'") (emphasis in the original); *see Morello v. AMCO Ins. Co.*, 650 F. App'x 522, 523 (9th Cir. 2016) (holding "[i]t was reasonable for AMCO to rely on Dr. Soong's expert opinion that Morello was not entitled to future medical care, particularly since Nurse Powell and Dr. Strassberg reached a similar conclusion" and because "[t]here [wa]s no evidence in the record that Dr. Soong acted in bad faith in reaching his conclusion or in destroying the documents provided by AMCO after he completed his report.") (citations omitted). "'A dispute is legitimate, if 'it is founded on a basis that is *reasonable under all the circumstances*.' . . . 'This is an *objective* standard.'" *Ghazarian v. Magellan Health, Inc.*, 53 Cal. App. 5th 171, 186 (2020), *as modified on denial of reh'g* (Aug. 31, 2020) (quoting *Zubillaga*, 12 Cal. App. 5th at 1028) (emphasis in the original).

Indeed, "[a]lthough an insurer's bad faith is ordinarily a question of fact to be determined by a jury by considering the evidence of motive, intent and state of mind, the question becomes one of law when, because there are no conflicting inferences, reasonable minds could not differ." *Chateau Chamberay*, 90 Cal. App. 4th at 350 (citation modified).  "[A]n insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably." *Fadeeff*, 50 Cal. App. 5th at 102.  In other words, "'[a]n insurer cannot claim the benefit of the genuine dispute doctrine based on an investigation or evaluation of the insured's claim that is not full, fair and thorough.'" *Ghazarian*, 53 Cal. App. 5th at 186.

Summary judgment therefore "*may*" be appropriate "where an insurer, for example, is relying on the advice and opinions of independent experts," but "an expert's testimony will not *automatically* insulate an insurer from a bad faith claim based on a biased investigation." *Fadeeff*,

United States District Court
Northern District of California

50 Cal. App. 5th at 102. (emphasis in the original).  For instance, "[a] trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim.  The insurer may not just focus on those facts which justify denial of the claim." *Wilson*, 42 Cal. 4th at 721 (2007*).  Examples of "'where a biased investigation claim should go to jury [include]: (1) the insurer was guilty of misrepresenting the nature of the investigatory proceedings . . . ; (2) the insurer's employees lied during the depositions or to the insured; (3) the insurer dishonestly selected its experts; (4) the insurer's  experts were unreasonable; and (5) the insurer failed to conduct a thorough investigation.'" *Fadeeff*, 50 Cal. App. 5th at 102–03 (quoting *Chateau Chamberay*, 90 Cal. App. 4th at  348–49) (ellipses in the original).  "[W]hether the genuine dispute doctrine can be applied in cases involving 'purely a factual dispute' between an insurer and its insured can only be decided on a case-by-case basis." *Id.* at 102.

On the current record, a finder of fact could draw contradictory inferences regarding the reasonableness of Lincoln's investigation into Sahai's claim.  It is undisputed that after Dr. Flores found that Dr. Bonzon's opinion regarding Sahai's ability to work did not change her initial opinion, Lincoln obtained an assessment from Dr. Reeves as to whether Dr. Bonzon's opinion had merit.  After Dr. Reeves found that there was no objective medical evidence to support Dr. Bonzon's opinion, Lincoln terminated Sahai's claim.  But the question of whether this constituted a thorough and fair investigation of Sahai's claim is one that should be resolved by a jury.  The Court therefore DENIES both motions for summary judgment as to the implied covenant claim.

### C.    Breach of Contract

Sahai argues that "Lincoln's unreasonable withholding of benefits . . . satisfies the element of breach."  Sahai MSJ at 26.  Because there is a triable issue of material fact as to whether Lincoln reasonably investigated Sahai's claim, Sahai's motion for summary judgment on the breach of contract claim is DENIED.

### D.    Punitive Damages

Lincoln contends that, because the implied covenant claim fails, so too must Sahai's prayer for punitive damages.

"Punitive damages are available if in addition to proving a breach of the implied covenant of good faith and fair dealing proximately causing actual damages, the insured proves by clear and convincing evidence that the insurance company itself engaged in conduct that is oppressive, fraudulent, or malicious." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1164 (9th Cir. 2002) (citation modified). "Determinations related to assessment of punitive damages have traditionally been left to the discretion of the jury." *Amadeo*, 290 F.3d at 1165 (citation modified); *see Johnson & Johnson v. Superior Ct.*, 192 Cal. App. 4th 757, 762 (2011) ("[T]he question of whether the defendant's conduct will support an award of punitive damages is for the trier of fact, 'since the degree of punishment depends on the peculiar circumstances of each case.'") (citation omitted).

Given the high "clear and convincing" evidentiary standard and because summary judgment is not appropriate on the implied covenant claim, it is premature to address punitive damages at this juncture. Lincoln's motion for summary judgment is therefore DENIED as to punitive damages.

## IV.     MOTIONS TO FILE UNDER SEAL

### A.     Motions to Seal Documents Filed in Connection with Sahai's Motion for Summary Judgment (ECF Nos. 70 & 73)

Sahai moves to file under seal documents that Lincoln designated as confidential. ECF No. 70. Sahai's motion to seal is defective in several respects. First, Sahai incorrectly filed a "motion to seal" instead of a motion to consider whether another party's material should be sealed. ECF No. 70; Civ. L.R. 79-5(f) ("For any document a party ('Filing Party') seeks to seal because that document has been designated as confidential by another party or non-party (the 'Designating Party'), the Filing Party must, instead of filing an Administrative Motion to File Under Seal, file an Administrative Motion to Consider Whether Another Party's Material Should Be Sealed.").

Second, Sahai filed the motion to seal, attorney declaration, and proposed order under seal, even though they do not contain any confidential information. The Court therefore ORDERS ECF Nos. 70, 70-1, and 70-2 to be unsealed.

Third, the motion to seal states that only Exhibits AA, BB, and CC were lodged under seal.

21

But Sahai also filed redacted versions of her motion for summary judgment and SUMF with no explanation as to why. ECF Nos. 70-3, 70-4. This is improper.

Fourth, the unredacted documents do not highlight the portions sought to be sealed and omit the 'FILED UNDER SEAL" designation. *Compare* ECF Nos. 70-3, 70-4 (sealed Sahai MSJ and SUMF) *with* ECF Nos. 71, 71-1 (public Sahai MSJ and SUMF); Civ. L.R. 79-5(e)(2) ("The unredacted version must include the phrase 'FILED UNDER SEAL' prominently marked on the first page and must highlight the portions for which sealing is sought."). This requires the Court to conduct a side-by-side comparison of the public and under seal versions of documents to determine what Sahai identifies as subject to sealing.

Instead of responding to Sahai's motion to seal by filing a statement or declaration, Lincoln filed its own sealing motion. ECF Nos. 73, 77[9]; *See* Civ. L.R. 79-5(f)(3) ("Within 7 days of the motion's filing, the Designating Party must file a statement and/or declaration as described in subsection (c)(1).").

Because the Court has stricken Sahai's unauthenticated exhibits, *see supra* § III(A)(2), these sealing motions are TERMINATED AS MOOT and the documents filed conditionally under seal will remain sealed.

### B.    Lincoln's Motion to File Under Seal (ECF No. 77)

Lincoln moves to file under seal Exhibits 43, 44, and 48 to Lincoln's motion for summary judgment (ECF Nos. 74-46, 74-47, 74-48). ECF No. 77. Because the Court does not rely on these documents in ruling on the summary judgment motions, the motion to seal is TERMINATED AS MOOT, and the documents filed conditionally under seal will remain sealed.

### V.    CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Sahai's motion for summary judgment and Lincoln's motion for summary judgment are DENIED.

---

[9] Lincoln filed two motions to seal, both of which address Exhibits AA, BB, and CC. It is unclear why Lincoln moved to seal these exhibits twice, but duplicative requests are unnecessary.

United States District Court
Northern District of California

2. Sahai's motion to file an untimely motion for summary judgment is GRANTED.

3. Sahai's motion to seal, attorney declaration, and proposed order (ECF Nos. 70, 70-1, and 70-2) shall be UNSEALED.

4. Sahai's motion to seal (ECF Nos. 70) and Lincoln's motions to seal (ECF Nos. 73, and 77) are TERMINATED AS MOOT.

**IT IS SO ORDERED.**

Dated: May 29, 2026

Noël Wise
United States District Judge

23